IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN MOTT <br> ▆▆▆▆▆▆▆ <br> East Branch, NY 13756 <br> <br> Plaintiff, <br> <br> v. <br> <br> JOHNSTON & RHODES <br> BLUESTONE CO. <br> 1 Bridge Street <br> P.O. Box 130 <br> East Branch, NY 13756 <br> <br> Defendant. | CIVIL ACTION <br> <br> No. 3:14-cv-635 (LEK/DEP) <br> <br> **JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, John Mott, (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

### I. Introduction

1. Plaintiff has initiated this action to redress violations by Johnston & Rhodes Bluestone Co. (hereinafter referred to as "Defendant") for violations of the Americans with Disabilities Act ("ADA" - 42 USC §§ 12101 *et. seq.*) and the New York State Human Rights Law ("HRL" - N.Y. Exec. Law §290 *et seq.*). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### II. Jurisdiction and Venue

2. This action is initiated pursuant to the ADA. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with

traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

3. The United States District Court for the Northern District of New York has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as the federal claims asserted herein.

4. Venue is properly laid in this District pursuant to 28 U.S.C. sections 1391(b)(1) and (b)(2), because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff exhausted his administrative remedies (with respect to his ADA claims) because he timely filed a Charge with the Equal Employment Opportunity Commission (EEOC) and has instituted the instant action within 90 days of receiving a Right to Sue letter from the EEOC.

### III. Parties

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult with an address as set forth above.

8. Defendant is a for-profit business entity that quarries, fabricates, ships, and distributes bluestone throughout the United States.

9. Defendant has and continues to employ over 15 employees per calendar year, and Defendant provides and distributes goods throughout interstate commerce.

10. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendant.

### IV. Factual Background

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff worked for Defendant for approximately 13 years operating saw mills until his eventual termination on or about December 2, 2013 (discussed further *infra*).

13. Plaintiff has and continues to suffer from various heart-related health conditions that qualify as disabilities under the law including but not limited to high blood pressure and hypertension.

14. Plaintiff's aforementioned heart conditions substantially limit his enjoyment of major life activities including but not limited to - at times - exercising, regulating his blood pressure and working (this is not an exhaustive list).

15. For example, in or about October 2012, Plaintiff underwent open heart surgery due to his aforementioned disabilities and requested an approximately one month long medical leave of absence from work (a reasonable accommodation).

16. Defendant allowed Plaintiff to take the requested leave of absence.

17. During Plaintiff's aforementioned medical leave of absence, Plaintiff's job duties were temporarily assumed by a foreman named "Joel" (last name unknown).

18. Upon Plaintiff's return to work on or about November 26, 2012, Plaintiff was reinstated to the same position that he had worked prior to his short medical leave of absence.

19. Although Plaintiff was reinstated to the same position upon his return to work, Joel approached Plaintiff about taking over Plaintiff's assigned overtime shifts because he did not think that Plaintiff would be able to perform such shifts.

20. Plaintiff informed Joel that he was able to perform such shifts and intended to keep working them.

21. Over the approximately one-year period following his return from medical leave, Joel regularly approached Plaintiff about giving up his overtime shifts because Joel believed that Plaintiff was unable to perform them.

22. Despite Plaintiff's ability to perform the overtime shifts, Plaintiff's overtime shifts began to be assigned to Joel by Plaintiff's manager named "Pete" (last name unknown).

23. In or about October of 2013, Plaintiff complained to Defendant's management including but not limited to Danny Johnston that Plaintiff believed that his overtime shifts were being assigned to other employees due to his health conditions.

24. Approximately one month after Plaintiff's aforementioned complaint to Mr. Johnston, one of Defendant's foremen approached Plaintiff and expressed hostility towards Plaintiff's complaint including but not limited to telling Plaintiff that he should not be complaining to management.

25. On or about November 19, 2013, Plaintiff approached Defendant's management and complained that he was getting a hard time from management due to his disabilities. Specifically, Plaintiff complained that he was being mistreated due to his disabilities and said "I ought to put in my two weeks' notice."

4

26. Approximately one day later, Plaintiff was told by a coworker that members of Defendant's management were saying that Plaintiff had put in his two weeks' notice and would be resigning.

27. Plaintiff immediately contacted several members of Defendant's management and told them that he never intended to resign, did not want to resign and did not plan on resigning.

28. Despite Plaintiff's objections, members of Defendant's management repeatedly told Plaintiff that he had put in notice of his resignation and that his resignation would be effective at the conclusion of two weeks.

29. Over the final two weeks of his employment with Defendant, Plaintiff repeatedly told members of Defendant's management in person and by text message that he did not resign or intend to resign, however, Defendant's management maintained that Plaintiff's last day of work would be December 2, 2013.

30. On or about December 2, 2013, Plaintiff was informed not to report to work the next day because his "resignation" was effective as of that day.

31. Defendant's management terminated Plaintiff's employment following a continuing pattern of hostility towards Plaintiff that began shortly after his disabilities were disclosed to management and shortly after Plaintiff complained about discriminatory treatment to management.

32. Defendant's management attempted to disguise Plaintiff's termination as a voluntary resignation although Plaintiff clearly did not intend to resign at the time he made the statement about his "two weeks' notice" and repeatedly informed Defendant's management afterwards that he did not intend to resign.

33. In fact, the "two weeks' notice" statement that Plaintiff made by which Defendant's management attempts to justify his termination was actually a complaint of discrimination itself.

34. Plaintiff was terminated because of his health conditions and/or in retaliation for complaints of discrimination.

## COUNT I
### Violations of the Americans with Disabilities Act ("ADA", as amended)
### ([1] Discrimination; [2] Failure to Accommodate; [3] Retaliation)

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. Plaintiff properly exhausted his administrative remedies before proceeding in this Court for violations of the ADA by timely filing a Charge with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant Complaint within 90 days of receiving a notice of case closure and/or right-to-sue letter.

38. Plaintiff was terminated by Defendant because of: (1) his known health conditions; (2) his perceived health conditions; and/or (3) due to his record of impairment.

39. Plaintiff was also terminated in retaliation for requesting medical accommodations from Defendant (a short medical leave) and for opposing unlawful discrimination in the workplace towards himself.

40. Defendant terminated Plaintiff's employment in exceedingly close proximity to his final complaints of disability discrimination.

41. The actions as aforesaid in this Complaint constitute unlawful discrimination, retaliation and failure to accommodate under the ADA, as amended.

**Count II**
**New York State Human Rights Law ("HRL")**
**(Disability Discrimination/Hostile Work Environment/Retaliation)**
**- Against All Defendants -**

35. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36. Plaintiff re-asserts and re-alleges each and every allegation as set forth in Count I as such actions constitute identical violations of the HRL.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded punitive or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: *[signature]*

Adam C. Lease, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: May 30, 2014

8